**Alfred SCHROEDER, Plaintiff (Respondent and Appellant),**

**v.**

**PRINCE CHARLES, INC., a Corporation, and Terry Nicholson, Defendants (Appellants and Respondents).**

Nos. 53023, 53024.

Supreme Court of Missouri, Division No. 1.

April 8, 1968.

Rehearing Denied May 13, 1968.

Daniel, Raskas, Ruthmeyer & Schneider, H. Jackson Daniel, Bernard A. Ruthmeyer, St. Louis, for defendants-appellants, Prince Charles, Inc., a Corp., and Terry Nicholson.

Robert V. Niedner, Paul F. Niedner, Niedner, Niedner & Moerschel, St. Charles, for plaintiff (respondent and appellant).

HIGGINS, Commissioner.

Upon trial without a jury, the court found that plaintiff should recover $23,567 on his petition and that defendants should recover $4,056 on their counterclaim "offset against plaintiff's award." Pursuant to such findings, judgment was entered for plaintiff against defendants for the difference of $19,511 and for a mechanic's lien on defendants' premises. By stipulation defendants are appellants and plain-

tiff is respondent. Appellants seek to have the net judgment set aside; respondent undertakes to support the court's rulings and, by cross appeal, seeks to have the "offset" set aside and judgment entered for him in the full amount of $23,567.

A recital of pleadings and rulings is necessary to an understanding of the appeal points.

By original petition and amendments permitted during trial, plaintiff alleged that on September 21, 1965, he entered into a written contract with defendants to deliver dirt to defendants' Prince Charles Park, a proposed mobile home village, for 60¢ per cubic yard, to compact and grade same for 15¢ per cubic yard, and that he did deliver and compact at least 50,201 cubic yards of dirt; that, in addition, at the instance of defendants, he graded and moved 9,665 cubic yards of dirt from a certain ridge at an agreed price of 25¢ per cubic yard; that he also did the grading for and installing of a culvert at the instance of defendants; that all such services were completed by July 15, 1966, by reason of which defendants became indebted to him in an amount, after allowing all credits, of $23,567, the amount of his prayer.

Defendants answered by general denial and counterclaimed, alleging entry into an agreement with plaintiff September 21, 1965, for delivery of dirt at 60¢ per cubic yard, for grading and compacting of same at 15¢ per cubic yard, and that plaintiff delivered 37,240 cubic yards of dirt but did not compact or grade it to the agreed "finish"; that they also agreed upon delivery of an additional 9,900 cubic yards of dirt for $1,500; that they also agreed upon grading of the ridge at 15¢ per cubic yard, and that plaintiff graded 9,665 cubic yards at that price; that by reason of these allegations plaintiff has claimed a sum in excess of the amount to which he is entitled; and that plaintiff's failure to fully per-

form resulted in damage to defendants of $5,925. Defendants also claimed damages by way of interest accrued due to delayed performance and for "loss of revenue."

Plaintiff's reply admitted the 75¢-per-cubic-yard price, as alleged in his own petition, but denied the allegation of the amount of dirt delivered and the allegation of failure to grade and compact. He denied the agreement to deliver 9,900 cubic yards of dirt for $1,500. He admitted the agreement to grade 9,665 cubic yards of dirt from the ridge, denied the 15¢-per-cubic-yard price, and realleged the agreed price of 25¢ per cubic yard on that item. The allegations of interest and loss of revenue were denied.

At the beginning of trial, plaintiff filed a motion to dismiss defendants' counterclaim and to strike paragraph 2 of the counterclaim which was defendants' allegation that plaintiff agreed to furnish 9,900 cubic yards of dirt for $1,500. The ruling on this motion is unclear, the record showing only that the "motion to strike defendants' amended counterclaim * * * is * * * ordered granted."

Also at the outset of trial, defendants orally moved to require plaintiff to elect between contract and quantum meruit as the theory upon which he would proceed, which motion was overruled. Defendants also requested and were denied a continuance which they sought on account of the ruling on their counterclaim and for taking plaintiff's motion to amend his pleadings "with the case."

Alfred Schroeder owned a hill from which he sold and transported dirt. In September 1965, he met with Terry Nicholson who showed him some land he and Prince Charles, Inc., wished filled. After examining the defendants' site and plaintiff's dirt, Mr. Schroeder and Mr. Nicholson went to the office of defendants' engineer, St. Charles Engineering Co., to

discuss their transaction. On a later day, September 21, 1965, they returned to St. Charles Engineering Co., and executed a document drawn by Terry Nicholson:

**17 September 1965**

Mr. Terry Nicholson
100 North Hanley
Clayton 5, Missouri

Dear Mr. Nicholson,

This letter is to confirm our arrangement regarding dirt. I agree to deliver to Prince Charles Park, a proposed mobile home village on Highway 94 North, dirt at the price of 60¢ a cubic yard on the site as directed, and I can provide up to ~~18,000~~ *60 000* cubic yards at this price. Said price does not include any grading or compaction which, if required, shall be by separate agreement. ~~The price is good until ───── 66~~

Yours truly,

*Alfred Schwab*

*Terry Nicholson
9/21/65*

*compaction & grading to finish grades
To add 15¢ a cubic yard more
no detail grading*

---

Plaintiff could not begin this work until receipt of a cut sheet showing grades and fills. The cut sheet was dated December 21, 1965; grade stakes were thereafter set and plaintiff began hauling dirt. He hauled dirt in December, 1965, and in January and March, 1966, by which time he had hauled about 40,000 cubic yards. He could not haul in February due to bad weather conditions. In March he was told to stop hauling from his hill and to start digging a lagoon from which defendants anticipated obtaining 22,000 cubic yards of fill, but their calculations went awry when

the water table was found to be higher than expected. He did not haul dirt in April or May due to wet weather. He resumed hauling in June and continued in early July until told to stop by defendants following disagreements over plaintiff's demands for money. When plaintiff stopped hauling, he figured that he had delivered about 60,000 cubic yards of dirt; defendants' engineers computed the amount "based on our cross section and the holes that we dug" at 50,201 cubic yards. Plaintiff stated he "rough graded" and compacted the fill, using a scraper and earth movers; defendants stated it was necessary to employ Koepke Grading Company to complete the site grading. They paid Koepke by three checks, two of which totaled $4,056. Plaintiff's version was that these amounts, in all $6,056, were made necessary by defendants' engineers' errors.

Mr. Schroeder stated he was instructed, as an item in addition to the written contract, to grade a ridge on defendants' property, to haul dirt from it and scatter it as fill on the property. According to him, the price for this was agreed to be 25¢ per cubic yard and defendants' pleadings concede the amount of grading and dirt on this agreement to be 9,665 cubic yards, the only dispute being the price on this item which they claim was 15¢ per cubic yard. The lagoon, although not the subject of this suit, is discussed in connection with the amounts of dirt moved and the work done by plaintiff. It appears that, pursuant to yet another agreement for construction of the lagoon, plaintiff moved 12,400 cubic yards of dirt for which he was to be paid at the rate of 25¢ per cubic yard. This item needs to be mentioned here because the total payments acknowledged by plaintiff from defendants cover this item as well as the matters which are the subject of this suit.

Before commencing to haul dirt after December 21, 1965, Mr. Schroeder was furnished a culvert pipe and requested by defendants to install it, which he did, such services being of a reasonable value of $400.

In addition to matters already mentioned, defendants' case consisted of testimony disputing plaintiff's evidence of quantities and prices, suggesting delays occasioned by plaintiff, and describing the need for additional compacting and grading in order to complete site preparation done by Koepke.

Payments to plaintiff were made by two checks: $10,000 March 23, 1966, and $10,000 June 20, 1966.

The court's findings and judgment are supported by this evidence, which also warrants these computations:

Due plaintiff:

| | | |
|---|---|---|
| 50,201 cubic yards of dirt delivered, graded, and compacted per written contract at 75¢ per cubic yard | $37,650.75 | |
| 9,665 cubic yards of dirt graded and hauled from ridge at 25¢ per cubic yard | 2,416.25 | |
| 12,400 cubic yards of dirt moved in construction of lagoon at 25¢ per cubic yard | 3,100.00 | |
| Construction of culvert | 400.00 | $43,567.00 |
| Less credit due defendants by part payment | | 20,000.00 |
| Judgment due plaintiff | | $23,567.00 |
| "Offset" by judgment due defendants for work done to "finish" grading and compaction | | 4,056.00 |
| Net judgment due plaintiff | | $19,511.00 |

Appellants' first contention is that the court erred in refusing their request for continuance because they "did not have an adequate time to examine said pleadings and determine their effect upon the trial strategy of appellants, especially in the light of the court's taking one of these pleadings under submission and making no ruling on it prior to forcing appellants to go to trial."

■ Appellants recognize that the grant or refusal of a continuance rests within the sound discretion of the trial court and the court's action will not be disturbed unless unsoundly exercised. Van Fleet v. Van Fleet, Mo.App., 253 S.W.2d 508, 510 [1]. They cite only State ex rel. Stanley v. American Surety Co., Mo.App., 80 S.W.2d 260, 263 [2], holding a refusal to grant a continuance was an abuse of discretion when an amended petition was filed the day before trial which injected new issues into the cause. Such is not this case. The amendments tendered by plaintiff and taken with the case by the court did not bring new issues into this cause but simply changed the dollar amounts of plaintiff's claims; and the ruling on plaintiff's motion to dismiss defendants' counterclaim and to strike appears to have been sustained only as to the striking of a single paragraph inasmuch as the court made a finding for defendants on their counterclaim. The record shows also that these matters were discussed and ruled in chambers prior to trial and that defendants did not move for continuance until after announcing "ready" for trial in open court. Such are not the circumstances upon which to convict a trial court of an abuse of discretion.

■ Appellants charge error to the court's refusal to require plaintiff to elect between his theory based on written contract and express agreements and his allegation in quantum meruit for the same total amount. The argument is simply that defendants were "forced" to proceed to trial without knowing upon which theory plaintiff was proceeding. Support for this argument is attempted by citing Merriam v. Star-Chronicle Pub. Co., Mo.App., 29 S.W. 2d 201, 203 [2], and Cape County Savings Bank v. Wilson, 225 Mo.App. 14, 34 S.W.2d 981, 986 [15, 16], which hold only that a motion to elect is the proper way to raise this issue; they do not otherwise prove appellants' point. It appears that this, too, was ruled in chambers and then was renewed to the record by defendants after announcing "ready" for trial. In any event, however, plaintiff was not required to elect because a count based on express contract may be joined with one in quantum merit without compelling the pleader to elect. Lee-Schermen Realty Co. v. Rueffel, Mo.App., 176 S.W.2d 655, 656 [4].

Appellants contend next that the court erred in entering judgment in favor of plaintiff on his petition and at the same time entering a judgment in favor of defendants on their counterclaim "because said judgments were mutually contradictory in that (the) petition was based on the alleged performance of an agreement while (the) counterclaim was based on the alleged failure of respondent to perform the same agreement."

■ The evidence shows that plaintiff hauled dirt to defendants' site, graded a ridge, built a culvert entrance, dug a lagoon, and spread, graded, and compacted dirt on defendants' premises. He continued to work until told to get off the job. Defendants did not plead that they did not receive the benefits of plaintiff's work; they pleaded and proved only that they paid for additional grading and compacting because plaintiff failed to finish the grading and compacting. A "counterclaim" is a counterdemand existing in favor of a defendant against a plaintiff and includes set-off and recoupment, Standard Insulation and Window Co. v. Dorrell, Mo.App., 309 S.W. 2d 701, 704 [4]; and recoupment is a purely defensive matter growing out of the transaction constituting plaintiff's cause of action, and is available only to reduce or satisfy a plaintiff's claim and permits of no affirmative judgment. State v. Weath-

erby, 344 Mo. 848, 129 S.W.2d 887, 893 [11]. The defendant's counterclaim did contain matters which, if proven, would have warranted a judgment in excess of plaintiff's claim, in which case judgments for both parties would be mutually destructive. Johnson v. Girvin's Estate, Mo.App., 370 S.W.2d 163, 167 [1]; Blackman v. Botsch, Mo.App., 281 S.W.2d 532, 535 [5]. However, that portion of defendants' pleading upon which the court found in their favor was in the nature of recoupment and a finding by the court on such pleading in a sum less than the recovery to which plaintiff was found entitled on his petition does not render the judgment self-destructive. Lewis v. Oliver, Mo.App., 220 S.W.2d 748, 752 [1, 2]; Talbot-Quevereaux Const. Co. v. Tandy, Mo.App., 260 S.W.2d 314, 316–317 [105]; Bloomfield Reorganized School Dist., etc. v. Stites, Mo., 336 S.W.2d 95, 100–102 [5]. See also 20 Am.Jur.2d, Counterclaim, Recoupment and Set-off, §§ 1, 6, 12, 31, pp. 228, 231, 236, 253.

Appellants' Points IV and V charge error in sustaining respondent's objections "to evidence attempted to be adduced by appellants as to an oral agreement * * * for the time of performance of the written agreement * * *, because the written agreement made no mention of time of performance, and the oral testimony is properly admissible to complete the terms of a written agreement when a portion of (it) is not specifically covered by the writing," and to "testimony explaining the reasons for the scratching out of part of the document * * * because the document, on its face, showed that it had been altered and oral testimony is proper in order to explain and establish the true intent of the parties as expressed by the document with its alterations."

■ It is not necessary to discuss citations in support of appellants' reasoning on theories of partial integration, inducement, or other exceptions to the parol evidence rule. The review of this court-tried case, governed by Civil Rule 73.01, V.A.M.R.,

is upon both the law and the evidence as in equity cases; the judgment shall not be set aside unless clearly erroneous; due regard shall be given to the opportunity of the trial court to judge credibility of the witnesses, Heald v. Erganian, Mo., 377 S.W.2d 431, 433 [1]; and "'the appellate court considers such of the evidence as it deems admissible, and excludes from consideration evidence improperly admitted.'" Butcher v. McClintock, Mo., 373 S.W.2d 917, 922 [4]. Such review of the evidence described in the above quotation suggests nothing compelling a reversal of the trial court's finding.

■ In their last point appellants charge error in sustaining plaintiff's objection to testimony and offer of proof from defendants through their engineer, Fitch, that plaintiff agreed to provide additional fill dirt for $1,500 to fill a low area which was intended to have been filled with dirt obtained by digging the lagoon. No authority is cited in support of the point and it may, therefore, be considered as abandoned, Civil Rule 83.05; however, the record shows that the same witness, Fitch, was later permitted to give the evidence sought by the original question and offer, and the error, if any, was thus rendered harmless. Boring v. Kansas City Life Ins. Co., Mo., 274 S.W.2d 233, 239 [7].

Respondent's cross appeal charges the court erred in finding for defendants on their counterclaim because it did not state a cause of action, it had been dismissed, and there was no substantial evidence to support it.

■ Among other things, defendants' counterclaim alleged an agreement with plaintiff for delivery, grading, and compacting of dirt by plaintiff for 75¢ per cubic yard and that plaintiff delivered 37,240 cubic yards but did not compact or grade to finish as per agreement; that plaintiff has made an excessive demand for money,

has not fully performed, and failed to compact and grade the dirt delivered; that as a result defendants were damaged $5,925 for proper grading of their property. Such allegations are not mere conclusions and are sufficient to plead a cause of action for contract damages under Section 509.050, V.A.M.S., i. e., a contract, a breach, and resulting damage. Riley v. White, Mo.App., 231 S.W.2d 291, 295[1].

■ As previously stated, the record is not clear whether the trial court dismissed the entire counterclaim or only its paragraph 2; however, the order previously set out, when read with the evidence admitted and findings made, is properly interpreted to have stricken only paragraph 2 and therefore there was a counterclaim upon which to receive evidence and make a finding. In any event, in this court-tried case any variance between pleadings and proof was immaterial since the pleadings may be considered as amended to conform to the proof under Civil Rule 55.54, V.A.M.R. Heald v. Erganian, supra, 377 S.W.2d l.c. 439[4].

■ It already has been demonstrated that there was evidence to support the court's finding that defendants were damaged to the extent of $4,056, paid to Koepke Grading Co., by plaintiff's failure to finish the grading and compacting. Respondent argues that this evidence is susceptible to a construction that Koepke's work was occasioned by defendants' engineers' errors, but, under the rule, Civil Rule 73.01, supra, the appellate court defers to the trial court on such a disputed issue.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.